UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: AGUSTIN J. JARAMILLO and
LILLIAN V. JARAMILLO,

No. 18-13231-j7

Debtors.

## MEMORANDUM OPINION AND ORDER

The Chapter 7 Trustee filed an Objection to Debtor's Claim of Exemption ("Objection to Exemptions") requesting the Court to disallow the Debtor's claimed exemption under 11 U.S.C. § 522(d)(1)[1] in a residence located in San Luis, Colorado, and to limit the remainder of the Debtors' claimed exemptions under § 522(d)(5) in other real property. *See* Docket No. 14. Because Mr. Jaramillo uses the real property in San Luis, Colorado as "a residence," he can claim an exemption in that property under § 522(d)(1). However, because the federal exemption amounts are insufficient to exempt the equity in all of the Debtors' real property, the Court will sustain the Trustee's Objection to Exemption, in part.

BACKGROUND AND PROCEDURAL HISTORY

Mr. and Mrs. Jaramillo filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code on December 31, 2018. *See* Docket No. 1. The Chapter 7 Trustee filed the Objection to Exemptions on February 27, 2019. *See* Docket No. 14. In response, the Debtors stated that Mr. Jaramillo lived in New Mexico only 71 days during the 180 day period preceding the filing of the chapter 7 bankruptcy petition, and indicated that the Debtors intended to file a motion to "sever and dismiss" Mr. Jaramillo from the bankruptcy case. *See* Docket No. 15. On April 1, 2019, the Debtors filed a Motion to Dismiss Agustin J. Jaramillo ("Motion to Dismiss"),

---

[1] All future statutory references in this Memorandum Opinion and Order are to title 11 of the United States Code.

asserting that because Mr. Jaramillo lived most of the year in Colorado, venue is improper. *See* Docket No. 18. The Chapter 7 Trustee objected to the Motion to Dismiss. *See* Docket No. 22.

In September, counsel for the Debtors requested a hearing on the Motion to Dismiss. *See* Docket No. 24. The parties conducted discovery related to the Motion to Dismiss and the Objection to Exemptions until December 2, 2019. *See* Docket No. 26. The Court held a final, evidentiary hearing on both motions on December 18, 2019. The Court denied the Motion to Dismiss, concluding that because the Debtors voluntarily chose to file a bankruptcy case in this district and actively participated in the case, they waived any right to object to venue. *See* Docket No. 37. The Court deferred its ruling on the Objection to Exemptions and fixed a deadline of January 6, 2020 for the Debtors to file a motion to sever Mr. Jaramillo from this joint bankruptcy case if they wished to do so.[2] *See* Docket No. 38.

Debtors did not file the Motion to Sever Agustin J. Jaramillo ("Motion to Sever") until after the deadline. *See* Docket No. 39. Consequently, the Chapter 7 Trustee filed a motion to strike the Motion to Sever as untimely. *See* Docket No. 41. After notice and a hearing, the Court granted the Trustee's motion to strike the Motion to Sever. *See* Docket No. 46. The Debtors received a discharge on February 20, 2020. *See* Docket No. 47.

FACTS

The Debtors elected the federal bankruptcy exemptions available under § 522(b)(2) and § 522(d). Debtors' Schedule C, identifying property claimed as exempt, includes the following real properties and claimed exemptions:

| Property | Claimed Exemption Amount | Basis for Claimed Exemption |
|---|---:|---|
| 714 Main Street, San Luis, CO ("San Luis Property") | $17,500.00 | § 522(d)(1) |

---
[2] If the Debtors could sever Mr. Jaramillo from this bankruptcy case, Mr. Jaramillo might be able to claim exemptions under Colorado state law.

| | | |
|---|---|---|
| 5 acres unimproved land in CO ("5 acre tract") | $3,750.00 | § 522(d)(5) |
| 15 acres unimproved land in CO ("15 acre tract") | $3,250.00 | § 522(d)(5) |
| 6120 Cyonus Ave, Albuquerque, NM ("NM Property") | $3,004.00 | § 522(d)(5) |

None of the properties in Colorado are community property. The San Luis Property is Mr. Jaramillo's sole and separate property. Mr. Jaramillo owns a ¼ joint tenancy interest in the 5 acre tract with his three brothers, and a ½ joint tenancy interest in the 15 acre tract. The 5 acre tract and the 15 acre tract are unencumbered. The Debtors scheduled San Luis Property with a $8,607 claim against it. *See* Schedule D – Exhibit 1, p.21.[3] The NM Property is community property, and is subject to a mortgage in the amount of $126,996. *Id.*

Debtors scheduled the San Luis Property with a value of $35,000; the 5 acre tract with a value of $15,000; and the 15 acre tract with a value of $6,500. Debtors scheduled the NM Property with a value of $130,000. *See* Schedule A/B – Exhibit 1, pp 10 - 12. At the final hearing, the Chapter 7 Trustee elicited some conflicting evidence of the value of the various properties.

A Comparative Market Analysis for the San Luis Property dated February 13, 2019 reflected a market price of between $60,000 and $70,000. *See* Exhibit A, pp. 40 - 43. However, the person who prepared the analysis has not seen the house. *Id.* at p. 43. Mr. Jaramillo disagrees with the estimated value because he believes the properties used as comparison properties are not really comparable to the San Luis Property. The Real Property 2019 Notice of Valuation valued the property at $51,485. *Id.* at p. 35. Mr. Jaramillo testified that he believes the San Luis Property

---

[3] Mr. Jaramillo testified that there is a $10,000 encumbrance against the San Luis Property. No evidence other than Mr. Jaramillo's testimony and the Debtors' schedules establishes the existence of a lien against the San Luis Property.

3

is worth between $30,000 to $40,000. Several years ago, Mr. Jaramillo obtained an email from an associate broker for ERA Werner Realty, Inc. stating that she found three homes in the area that sold in 2009 for $30,000, $36,000, and 24,999. *See* Exhibit 1, p. 39.

For the 15 acre tract, a valuation estimate dated February 8, 2019 from Access Realty valued the property at $28,987. *See* Exhibit 1, p. 83. Mr. Jaramillo disagrees with this value and thinks the 15 acre tract is worth much less. The Real Property 2019 Notice of Valuation for the 15 acre tract values the property at $9,500, and for 2018, the stated value of the 15 acre tract on the Real Property Notice of Valuation was $12,000. *See* Exhibit 1, p. 86.

A valuation estimate dated February 8, 2019 from Access Realty valued the 5 acre tract at $9,199. *See* Exhibit 1, p. 86. Mr. Jaramillo believes the 5 acre tract is actually worth more than the opinion of value provided by Access Realty. He purchased the 5 acre tract for $16,000 in 1984, and he testified that he believes it is now worth between $16,000 and $19,000.

Finally, an ARMLS Seller's Report prepared January 22, 2019 for the NM Property values the property at $140,290, but gives an estimated range of $124,663 to $155,477. *See* Exhibit 1, p.74. Mr. Jaramillo testified that he and Mrs. Jaramillo purchased the NM Property for $139,000, and that he believes the NM Property is worth $140,000.

The San Luis Property is residential property that has been in Mr. Jaramillo's family for a very long time. The home was built in 1932, and Mr. Jaramillo lived there as a child. He eventually purchased the San Luis Property from his parents. At some point Mr. Jaramillo owned the San Luis Property in joint tenancy with his son. Mr. Jaramillo's son since passed away, and Mr. Jaramillo is now the sole owner. Mr. and Mrs. Jaramillo were married in 1996 and lived in the San Luis Property until 2005. At that time, they purchased the NM Property because Mrs. Jaramillo wanted to live closer to her children.

Mr. Jaramillo will be 87 years old in May of 2020. In the summer months and early fall, and during hunting season, he likes to live in the San Luis Property. Mrs. Jaramillo visits Mr. Jaramillo at the San Luis Property from time to time. Mr. Jaramillo typically resides at the San Luis Property from Memorial Day until the middle or end of September. He also stays at the San Luis Property for four to ten days in October. However, last year he was not able to spend as much time in the San Luis Property due to health issues. Healthcare is more conveniently located and readily available to Mr. Jaramillo in Albuquerque than it is in Colorado. The nearest Veteran's Administration doctors in Colorado are forty-five minutes away from the San Luis Property.

The San Luis Property is not currently habitable during the winter. The heater needs to be replaced; there are no storm doors; and the windows are single pane windows. If the San Luis Property were winterized, Mr. Jaramillo would live there during the winter months. Mr. Jaramillo maintains a Colorado driver's license and votes in Colorado. However, on the petition date, Mr. Jaramillo lived with Mrs. Jaramillo in the NM Property. The Debtors listed the NM Property as their address in their petition.

DISCUSSION

"In determining whether a debtor is entitled to claim an exemption, 'the exemption laws are to be construed liberally in favor of exemption.'" *In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003) (quoting *In re Ginther*, 282 B.R. 16, 19 (Bankr. D. Kan. 2002)).[4] The Chapter 7 Trustee has the burden of proving that the claimed exemptions are improper. Fed. R. Bankr. P. 4003(c)

---

[4] *See also In re Gregory*, 245 B.R. 171, 173 (10th Cir. BAP 2000), *aff'd without published opinion,* 246 F.3d 681 (10th Cir. 2000) (liberal construction of exemption statutes "effect[uates] their beneficent purposes.") (quoting *Royal v. Pancratz (In re Pancratz)*, 175 B.R. 85, 93 (D. Wyo. 1994)); *In re Griffith*, 449 B.R. 909, 911 (Bankr. W.D. Wis. 2011) ("As a policy matter, exemption rights are to be construed liberally in the debtor's favor in view of Congress's goal of providing a meaningful fresh start for debtors.").

("[T]he objecting party has the burden of proving that the exemptions are not properly claimed."); *Lampe*, 331 F.3d at 754.[5] A debtor may choose the federal bankruptcy exemptions or the exemptions available under other federal, state, or local law, unless the state does not authorize the debtor to choose the federal bankruptcy exemption scheme. *See* 11 U.S.C. § 522(b); 11 U.S.C. § 522(b)(2) (authorizing states to prohibit debtors from using the bankruptcy exemptions).[6] States that prohibit debtors from choosing the federal bankruptcy exemption scheme are known as "opt out" states. New Mexico is not an "opt out" state. *Foah*, 482 B.R. at 919 n.1. Thus, New Mexico debtors may choose either the federal bankruptcy exemptions or the New Mexico exemptions. *Id.*[7] However, joint debtors in non-opt-out states may not elect different exemption schemes. *See Feliciano*, 487 B.R. at 50 ("[S]pouses filing jointly must make the same election."). In other words, one joint debtor may not choose the federal bankruptcy exemptions while the other joint debtor elects the New Mexico exemptions. *See* 11 U.S.C. § 522(b)(1) ("In joint cases . . . . whose estates are ordered to be jointly administered . . . one debtor may not elect to exempt property listed in paragraph (2) [the bankruptcy exemptions available under § 522(d)] and the other debtor elect to exempt property listed in paragraph (3) [non-bankruptcy federal, state, or local exemptions] of this subsection.").

The Debtors elected the federal bankruptcy exemptions under § 522(d). Each debtor in a joint case is entitled to claim the federal bankruptcy exemptions. *See* 11 U.S.C. § 522(m)

---

[5] *See also In re Hodes*, 308 B.R. 61, 66 (10th Cir. BAP 2004) ("[T]he objecting Creditors have the burden of proving that the exemption is not properly claimed. The exemption is presumed to be valid, and the Creditors have the initial burden of producing evidence to rebut the presumption. Thereafter, the burden shifts back to the Debtor to come forward with evidence to demonstrate that the exemption was proper.").

[6] *See also In re Foah*, 482 B.R. 918, 919 n.1 (10th Cir. BAP 2012) ("11 U.S.C. § 522 allows debtors to elect to use either the exemptions provided by their state of residence or by federal law, unless their state of residence has elected to 'opt-out' of federal exemptions and, thus, requires its residents to use only state exemptions in bankruptcy."); *In re Feliciano*, 487 B.R. 47, 50 n.2 (Bankr. D.Mass. 2013) ("Bankruptcy Code § 522(b)(2) permits a state to 'opt out' of the federal exemption scheme, thereby requiring their residents to exempt property under state, federal non-bankruptcy or local law only.") (quoting *In re Gentile*, 483 B.R. 50, 51 n.2 (Bankr. D. Mass. 2012)).

[7] *See also In re Channon*, 424 B.R. 895, 899 (Bankr. D.N.M. 2010).

("Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case."). "Section 522(m) gives express statutory authorization for doubling in joint cases, by allowing each debtor to apply the same exemption scheme to the same item of property, so long as that item is included in each estate." *In re Bippert*, 311 B.R. 456, 471 n.25 (Bankr. W.D. Tex. 2004); *In re Lawrence,* 469 B.R. 140, 141 (Bankr. D. Mass. 2012) (the exemption under § 522(d)(1) is a "per debtor exemption"). The dollar amount of the statutory exemptions in effect when the Debtors filed their voluntary petition fixes the available exemption amount. *See In re Pacheco*, 342 B.R. 352, 357 (Bankr. D.N.M. 2006) ("[T]he value of the liens, the value of the property and the amount of the exemption are all measured as of the date of the filing of the petition."); *In re Swanson*, 207 B.R. 76, 79 (Bankr. D.N.J. 1997) (debtors who filed their bankruptcy petition prior to the effective date of the expanded exemption scheme were subject to the exemption scheme in effect at the time of the debtor's filing).

Section 522(d)(1) grants an exemption in

> [t]he debtor's aggregate interest, not to exceed $23,675 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . .

11 U.S.C. § 522(d)(1) (2018).

Subsection (5) of § 522(d), known as the "wild card" exemption, grants an exemption in

> [t]he debtor's aggregate interest, not to exceed $1,250 plus up to $11,850 of any unused amount of the exemption provided under paragraph (1) of this subsection.

11 U.S.C. § 522(d)(5) (2018).

"[T]he federal wild card exemption may be combined or stacked with other exemptions to protect any type of property." *In re Vaillancourt*, 260 B.R. 66, 71 (Bankr. D.N.H. 2001). *See also Brennan v. Ted Arnold Indus., Inc. (In re Brennan)*, 18 B.R. 312, 313 (Bankr. D.R.I. 1982)

("[D]ebtors may use their general exemption to increase specific exemptions on any property includable in § 522(d), including real estate.").

The Debtors claimed an exemption in Mr. Jaramillo's interest in the San Luis Property in the amount of $17,500 under § 522(d)(1), and relied on the wild card exemption under § 522(d)(5) to claim an exemption in Mr. Jaramillo's ¼ interest in the 5 acre tract, Mr. Jaramillo's ½ interest in the 15 acre tract, and the Debtors' community interest in the NM Property.

The Chapter 7 Trustee objected to the Debtors' claimed exemption under § 521(d)(1) in the San Luis Property, asserting that the San Luis Property is not the Debtors' residence. The Chapter 7 Trustee also asserts that the equity in the Colorado properties greatly exceeds the available exemption under § 522(d)(5).

*Whether the Debtors Can Claim an Exemption in the San Luis Property under § 522(d)(1)*

Section 522(d)(1) grants an exemption in real property the debtor uses as "a residence." 11U.S.C. § 522(d)(1). Courts are split on whether "residence" as used in this exemption statute means the debtor's actual homestead or principal residence, or whether the property need only be used as *a* residence. *Compare In re Stoner*, 487 B.R. 410, 419 (Bankr. D.N.J. 2013) ("[Section] 522(d)(1) extends only to real estate which a debtor truly intends to use as his homestead.") *and In re Brown*, 299 B.R. 425, 428 (Bankr. N.D. Tex. 2003) ("[F]or purposes of § 522(d)(1), the terms 'residence' and 'homestead' are equivalent and interchangeable.") *with Lawrence*, 469 at 142 ("By choosing not to limit the residence qualified for exemption under § 522(d) to a principal or primary residence, Congress presumably intended to encompass a broader category than principal residences, namely any residence.") *and In re Demeter*, 478 B.R. 281, 287 (Bankr. E.D. Mich. 2012) ("'[R]esidence' as used in § 522(d)(1), unambiguously, is not limited to a

8

'principal residence,' and a debtor can have more than one 'residence.'"). The Court is persuaded by the reasoning in *Lawrence* and *Demeter*.

Subsection (d)(1) of the Bankruptcy Code's exemption provisions found in § 522 allows an exemption in property the debtor or a dependent of the debtor "uses as a residence." 11 U.S.C. § 522(d)(1). Subsection (d)(1) uses the phrase "a residence," not *principal residence* or *homestead*. The Bankruptcy Code does not use those terms synonymously. Section 522 itself distinguishes between property the debtor or a dependent of the debtor "uses as a residence" and property the debtor or a dependent of the debtor "claims as a homestead." *Compare* 11 U.S.C. § 522(p)(1)(A) (referring to property the debtor or a dependent of the debtor "uses as a residence) *with* 11 U.S.C. § 522 (p)(1)(D) (referring to property the debtor or a dependent of the debtor "claims as a homestead" under State or local law). *Compare also* 11 U.S.C. § 522(o)(1) *with* 11 U.S.C. § 522(o)(4). Further, the Bankruptcy Code distinguishes between property the debtor "uses as a residence" and the "debtor's principal residence." The Bankruptcy Code defines "debtor's principal residence" in § 101(13A) as "a residential structure if used as the principal residence by the debtor." 11 U.S.C. § 101(13A). That defined term is used in § 1123(b)(5) and § 1322(b)(2). *See* 11 U.S.C. § 1123(b)(5) (limiting a debtor's right to modify secured claims to those secured *other* than "by a security interest in real property that is the debtor's principal residence"); 11 U.S.C. § 1322(b)(2) (same).

Congress could have limited the exemption in § 522(d)(1) to a debtor's principal residence, but it did not. In interpreting statutory language, the Court "must presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Dodd v. United States*, 545 U.S. 353, 357 (2005) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). As the *Demeter* court observed, the bankruptcy exemption statute unambiguously uses

9

the term "a residence," is not, therefore, limited to a "principal residence," and contemplates that a debtor could have more than one residence. *Demeter* 478 B.R. at 287. The statute contains no limiting modifier and, therefore, merely requires the debtor use the property as *a* residence in order to claim an exemption in such property under § 522(d)(1). *See Demeter,* 478 B.R. at 287-88 ("The use of the word 'residence' in § 522(d)(1), without the limiting modifier 'principal' or 'primary,' shows a Congressional intent to enable debtors to claim an exemption in a broader category of property than just a debtor's *principal* residence.").

"Residence," as defined in Black's Law Dictionary, is "[t]he place where one actually lives," and "[t]he act or fact of living in a given place for some time." Black's Law Dictionary 1310 (7th ed. 1999). Mr. Jaramillo uses the San Luis Property as a residence approximately four and a half months each year, in the summer months and early fall and for about a week in October. Mr. Jaramillo still considers himself a Colorado resident. He maintains a Colorado driver's license and votes in Colorado. Although the San Luis Property is not habitable during the winter and needs considerable repairs, Mr. Jaramillo actually lives at the San Luis Property for a significant portion of the year. That Mr. Jaramillo did not physically occupy the San Luis Property on the petition date, and was unable to live at the San Luis Property the year after he filed his joint bankruptcy petition due to health problems, does not negate his otherwise regular annual use of the San Luis Property as "*a* residence" in the summer and fall. *Cf. In re Lusiak*, 247 B.R. 699, 702 (Bankr. N.D. Ohio 2000) ("[A]ctual physical occupancy of a dwelling house is not an absolute necessity to a finding that a debtor actually occupies a house for purposes of the residency requirement of § 522(d)(1)."); *In re DeMasi*, 227 B.R. 586, 588 (D.R.I. 1998) ("[T]he determining factor [to satisfy the residence requirement of § 522(d)(1)] should not be so

10

mechanical as to require a debtor to occupy the home on the filing date or use the address on the bankruptcy filing.").

"Constructive occupancy" can meet the requirements of § 522(d)(1) and "can be defined as physical absence from a premises coupled with an intent to return to the premises at some point in the future." *Lusiak*, 247 B.R. at 703. *See also In re Yanovich*, 544 B.R. 306, 311 (Bankr. W.D. Pa. 2016) ("[S]ome courts have looked to the totality of the circumstances, which includes the intent of the debtor on the petition date, to determine whether a debtor can exempt property not actually occupied at the time of the filing of a bankruptcy case."). The evidence established that Mr. Jaramillo has regularly uses the San Luis Property as a residence and, as of the petition date, had both the intent and "a meaningful ability to occupy the property . . . within a reasonable time" in the future. *Yanovich*, 544 B.R. at 312 (quoting *In re Bennett*, 192 B.R. 584, 588 (Bankr. D. Me. 1996)). *See also In re Tankersley*, 575 B.R. 848, 862 (Bankr. E.D. Ark. 2017) ("[C]ourts have recognized that an intention to return to property where the absence is temporary may meet the use requirements of Section 522(d)(1).") (citations omitted).

A debtor who owns more than one residential property may "exempt either one, but only one, under § 522(d)(1)." *Lawrence*, 469 B.R. at 143. Here, Mr. Jaramillo owns the San Luis Property as his sole and separate property, and has a community property interest in the NM Property together with Ms. Jaramillo. Mr. Jaramillo can choose to apply the § 522(d)(1) exemption to either the San Luis Property or the NM Property, where he lives during most of the year with Mrs. Jaramillo. He chose to use the § 522(d)(1) exemption against the San Luis Property. The Court will, therefore, overrule the Trustee's objection to the Debtors' claim of exemption under § 522(d)(1).

Having determined that Mr. Jaramillo can claim an exemption in the San Luis Property under § 522(d)(1), the Court will next establish the value of the various properties to determine whether the equity in those properties exceeds the Debtors' available exemption amounts.

*Valuation of the Various Properties*

The Court will disregard the evidence of property values as stated in the various realty reports. None of the parties who prepared the reports testified at the hearing. The Access Realty, LLC estimate is a one page document that states it was based on "recent sales in the Sangre De Cristo Ranches" but does not provide any documentation of those recent sales. *See* Exhibit 1, p. 83. The "comparable" properties in the Comparative Market Analysis for the San Luis Property do not appear comparable on their face. Even though the valuation documents were admitted into evidence without objection, it is appropriate for the Court to disregard those documents because they contain patently unreliable hearsay evidence that the Court is not willing to consider to establish property values. *See* Fed. R. Evid. 801(c)(2) (defining hearsay as an out-of-court statement "offer[ed] in evidence to prove the truth of the mater asserted in the statement."); *Waddell v. Comm'r of Internal Revenue,* 841 F.2d 264, 267 (9th Cir. 1988) (per curiam) (excluding appraisal as improper hearsay evidence where appraiser was not available for cross-examination and no foundation was provided to establish that the appraisal fell within the business records exception to the hearsay rule); *In re Wright*, No. 01-2305-W, 2001 WL 1804187, at *1 n.1 (Bankr. D.S.C. June 13, 2001) (appraisal is itself "hearsay evidence which is not admissible absent testimony of the appraiser himself or herself.").

The Court concludes that it is appropriate to use the Debtors' own testimony and the values of the various properties as reported in the Debtors' schedules for purposes of evaluating the Chapter 7 Trustee's Objection to Exemptions. Those values are supported by Mr. Jaramillo's

12

testimony. The following chart summarizes the Court's findings as to the values of the properties and the Debtors' equity interest in the properties:

| Property | Value | Ownership Interest | Lien Amount | Equity Interest |
|---|---|---|---|---|
| San Luis Property | $35,000.00 | Mr. Jaramillo Separate Property | $8,607.00 | $26,393.00 |
| 15 acre tract | $6,500.00 | Mr. Jaramillo (½ interest) | $0.00 | $3,250.00 |
| 5 acre tract | $15,000.00 | Mr. Jaramillo (¼ interest) | $0.00 | $3,750.00 |
| NM Property | $140,000.00 | Both Debtors Community Property | $126,996.00 | $13,004.00 |

The Debtors valued the NM Property at $130,000 in their schedules. However, the Debtors purchased the NM Property for $139,000, and Mr. Jaramillo testified that he believes the NM Property is currently worth about $140,000. A value of $140,000 for the NM Property is appropriate.

*Application of the Available Exemptions to the Properties*

As discussed above, Mr. Jaramillo can claim an exemption in the San Luis Property under § 522(d)(1). The Debtors relied on § 522(d)(5) to claim an exemption in the remaining properties. The "wild card" exemption under § 522(d)(5) can be applied to "any property," including real property. *See* 11 U.S.C. § 522(d)(5) (providing an exemption in "the debtor's aggregate interest in any property . . ."); *Vaillancourt*, 260 B.R. at 71 ("Both the plain language of section 522(d)(5) and its legislative history reflect a Congressional intent that the federal wild card exemption appl[ies] to all types of property, not just the types described in section 522(d).") (citing *In re La Flamme*, 14 B.R. 21 (1st Cir. BAP 1981)); *cf. In re Johnson*, 57 B.R. 635, 638 (Bankr. N.D. Ill. 1986) ("The only reasonable interpretation of the phrase 'any other property' [used in the Illinois state exemption statute] is that it means just that, *any* other property, i.e., that a debtor may claim the wild card exemption in any other property without limitation."). *But see*

13

*In re Hilbert*, 12 B.R. 434, 436 (Bankr. E.D. Pa. 1981) ("Congress intended the phrase 'any property' in Section 522(d)(5) to mean any property of the estate, including . . . real property owned by the debtor but not used as his residence.").

The total equity in the NM Property is $13,004. Each joint debtor may claim an exemption under § 522(d)(5) in their one-half community property interest in the NM Property. *See Smith v. Bank of Glenwood (In re Smith)*, 8 B.R. 375, 379 (Bankr. S.D. Ca. 1980) ("[J]oint debtors can stack federal exemptions in community property . . ."); *cf. In re Victor*, 341 B.R. 775, 781 (Bankr. D.N.M. 2006) (debtor could claim exemption in her one-half interest in the community property). Mr. Jaramillo also claimed as exempt the entire amount of his equity interest in the 5 acre tract and the 15 acre tract under § 522(d)(5). Mr. Jaramillo's equity interest in the 5 acre tract, the 15 acre tract and the NM Property totals $13,502.[8] However, based on Mr. Jaramillo's current claimed exemption of $17,500 in the San Luis Property, his remaining available wild card exemption is limited to $7,425.[9]

CONCLUSION

Based on the foregoing, the Court will overrule, in part, the Chapter 7 Trustee's Objection to Exemptions. Mr. Jaramillo may claim an exemption in the San Luis Property under § 522(d)(1) because it is property he uses as "a residence." However, because the value of the San Luis Property exceeds the maximum available exemption under § 522(d)(1), it is subject to liquidation by the Chapter 7 Trustee.[10] Based on Mr. Jaramillo's current claimed exemption in

---

[8] 5 acre tract    $3,750
  15 acre tract   $3,250
 NM Property   $6,502
 TOTAL:       $13,502
[9] $23,675 less $17,500 claimed exemption = $6,175 plus $1,250 available under § 522(d)(5) = $7,425
[10] The maximum exemption available under § 522(d)(1) is $23,675 as of the date the Debtors filed their petition. *See* 11 U.S.C. § 522(d)(1) (2018). Mr. Jaramillo's total equity interest in the San Luis Property is $26,393. ($35,000 value less $8,607 lien).

the San Luis Property, Mr. Jaramillo may claim up to $7,425 in the remaining real properties, including the NM Property.[11]

WHEREFORE, IT IS HEREBY ORDERED, that the Chapter 7 Trustee's objection to the Debtors' claimed exemption under § 522(d)(1) is OVERRULED.

ORDERED FURTHER, the San Luis Property is subject to liquidation by the Chapter Trustee.

ORDERED FURTHER, that based on the Debtors' current claimed exemptions, the Chapter 7 Trustee's Objection to Exemptions is sustained, in part, to limit Mr. Jaramillo's available exemption under § 522(d)(5) in the remaining real properties to $7,425.

ORDERED FINALLY, that the Debtors may amend their Schedule C to claim an exemption under § 522(d)(1) in Mr. Jaramillo's interest in the San Luis Property in a different amount, and to claim exemptions under § 522(d)(5) in the remaining available wild card amount in the NM Property, the 5 acre tract, and the 15 acre tract against the value of such properties established in this Memorandum Opinion and Order.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 14, 2020

---

[11] If Mr. Jaramillo were to reduce his claimed exemption under § 522(d)(1) in the San Luis Property to $11,825, he would retain the maximum wild card exemption amount of $13,100, which could be applied to the remaining properties, including the 5 acre tract, the 15 acre tract, and the NM Property, leaving him with only $402 of non-exempt equity in those properties. ($6,502 = equity in NM Property + $3,750 = equity in 5 acre tract + $3,250 = equity in 15 acre tract = $13,502 total equity interest vs. $13,100 maximum wild card exemption amount).

COPY TO:

James Clay Hume
Attorney for Debtors
Hume Law Firm
PO Box 10627
Alameda, NM 87184-0627

Benjamin A. Jacobs
Attorney for Chapter 7 Trustee
Askew & White, LLC
1122 Central Ave. SW, Suite 1
Albuquerque, NM 87102